United States District Court
Southern District of Texas
FILED

JAN 14 2013

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Cr. No. B-13-003 |
| | : | |
| vs. | : | VIOLATION: |
| | : | |
| WAYNE E. BALL, | : | 18 U.S.C. § 371 |
| | : | (Conspiracy) |
| Defendant. | : | |

## INFORMATION

The United States of America charges that:

### COUNT ONE

Conspiracy to Falsify Records in Federal
Investigations and to Obstruct An Agency Proceeding
18 U.S.C. § 371

### GENERAL ALLEGATIONS

Unless otherwise specified, at all relevant times:

1. The United States Department of Homeland Security ("DHS") was a department and agency within the executive branch of the United States government charged with protecting the United States from threats to the national security, including ensuring the security of the borders of the United States.

2. DHS's component agencies included, among others, United States Customs and Border Protection ("CBP") and United States Immigration and Customs Enforcement ("ICE"). CBP was the DHS component agency with the day-to-day responsibility for securing the borders of the United States, keeping terrorists and their weapons out of the United States, enforcing immigration and drug laws, and facilitating lawful international trade and travel. ICE was DHS's

principal investigative component, charged with conducting civil and criminal investigations to promote homeland security and public safety, as well as conducting operations enforcing immigration laws and removing those illegally present in the United States from within its borders.

3. The Department of Homeland Security Office of Inspector General ("DHS-OIG") was an independent and objective inspection, audit, and investigative body charged with promoting effectiveness, efficiency, and economy in the DHS's programs and operations, and preventing and detecting fraud, abuse, mismanagement, and waste, including criminal conduct, in such programs and operations. In its Semiannual Report to Congress dated April 1, 2011 through September 30, 2011, DHS-OIG reported that it had initiated 715 investigations, closed 433 investigations, referred 202 investigations for criminal prosecution, had 81 investigations accepted for prosecution and had 74 investigation declined for prosecution. DHS-OIG also reported that its investigations resulted in 110 indictments and 136 convictions, and that it had 2,564 investigations open at the time of the report. DHS-OIG maintained its headquarters in Washington, DC. DHS-OIG was a department and agency within the executive branch of the United States government.

4. DHS-OIG was also the principal component within DHS with the responsibility to investigate alleged criminal activity by DHS employees, including corruption by CBP and ICE personnel affecting the integrity of the borders of the United States. DHS-OIG maintained a field office near the southern border of the United States, in McAllen, Texas ("MCA").

5. Defendant WAYNE E. BALL served as a special agent with DHS-OIG at MCA from in or about January 2009 to in or about November 2012.

6. Supervisor A served as one of Defendant BALL's supervisors at MCA.

7.  Special Agent A served as a special agent with DHS-OIG from in or about January 2011 to the present.

8.  Criminal Investigation 1 was initiated by DHS-OIG in or about March 2010. The investigation concerned allegations that a CBP officer was assisting the unlawful smuggling of undocumented aliens and narcotics into the United States. In or about June or July 2011, Criminal Investigation 1 was assigned to Special Agent A and his partner.

9.  Memoranda of Activity ("MOAs") were documents required to be used by DHS-OIG special agents to record various types of investigative activity, including interviews, reviews of records, arrests, search warrant executions, service of subpoenas, and surveillance. MOAs were required to be completed truthfully and accurately. MOAs were also required to be signed by the special agent who authored the MOA as well as a supervisor, and were then to be maintained in the investigative case file. According to DHS-OIG policy, MOAs were required to be submitted for approval by a special agent within five working days after the activity, or as soon thereafter as was practical.

10. In September 2011, DHS-OIG conducted an internal inspection of MCA to evaluate whether its internal investigative standards and policies were being followed at MCA. The inspection had originally been scheduled for February 2011. Since or in or about February 2011, both the lead inspector and MCA management, including Supervisor A, had been preparing for the inspection, including through discussion with each other.

THE CONSPIRACY AND ITS OBJECTS

11. Beginning in or about August 2011 and continuing until in or about January 2012, in the Southern District of Texas and elsewhere, defendant BALL, Supervisor A, and Special Agent A and others known and unknown to the United States, did unlawfully combine, conspire,

confederate, and agree together and agree with each other to commit the following offenses against the United States:

  a. to falsify documents and make false entries in records with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of DHS-OIG, and in relation to and in contemplation of any such matter, in violation of 18 U.S.C. § 1519; and;

  b. to intentionally and corruptly endeavor to influence, obstruct and impede the due and proper administration of the law, under which a proceeding, to wit, an internal DHS-OIG inspection of MCA, was pending before DHS-OIG, in violation of 18 U.S.C. § 1505.

## THE PURPOSE OF THE CONSPIRACY

12. It was a purpose of the conspiracy to conceal severe lapses in investigative standards and internal policies, including significant periods of inactivity in pending criminal investigations over periods of months or years, from DHS-OIG personnel conducting the internal inspection and from DHS-OIG headquarters; more specifically, to conceal those lapses in particular criminal investigations by falsifying investigative activity which, in truth and fact, had not taken place.

## MANNER AND MEANS

The conspiracy was carried out by the following manner and means:

13. At Supervisor A's direction, Special Agent A drafted false MOAs to fill the gaps of inactivity in Criminal Investigation 1. Because the MOAs were intended to fill gaps that had occurred when Special Agent A was either not present at MCA to investigate cases or was not employed by DHS-OIG at all, at Supervisor A's direction, Special Agent A attributed the

investigative activity to defendant BALL.

14. At Supervisor A's direction, defendant BALL signed and backdated the false MOAs.

15. Supervisor A also signed and backdated the false MOAs and the MOAs were placed in the DHS-OIG case file for Criminal Investigation 1 in advance of the internal inspection of MCA.

## OVERT ACT

16. In furtherance of the conspiracy and to achieve its purposes, in or about September 2011, in the Southern District of Texas, defendant BALL signed and backdated the false MOAs related to Criminal Investigation 1 that were provided to him by Special Agent A.

All in violation of Title 18, United States Code, Section 371.

Dated: January 10, 2013

JACK SMITH
Chief
Public Integrity Section

KENNETH MADIGSON
UNITED STATES ATTORNEY

*Timothy J. Kelly*
Timothy J. Kelly
Eric L. Gibson
Trial Attorneys
Public Integrity Section
1400 New York Ave. NW
Washington, DC 20005
(202) 514-1412