**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
**FILED**

JAN **1 7** 2013

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Cr. No.** B-13-003-01 |
| | : | |
| **vs.** | : | **VIOLATION:** |
| | : | |
| **WAYNE E. BALL,** | : | **18 U.S.C. § 371** |
| | : | **(Conspiracy)** |
| **Defendant.** | : | |
| | : | |

**FACTUAL BASIS FOR PLEA**

The United States of America, by and through it undersigned attorneys within the U.S. Department of Justice, Criminal Division, Public Integrity Section, and the defendant, Wayne E. Ball, personally and through his undersigned counsel, hereby stipulate to the following facts pursuant to U.S. Sentencing Guidelines § 6A1.1 and Federal Rule of Criminal Procedure 32(c)(1):

1.      The United States Department of Homeland Security ("DHS") is a department and agency within the executive branch of the United States government charged with protecting the United States from threats to the national security, including ensuring the security of the borders of the United States.

2.      DHS's component agencies include, among others, United States Customs and Border Protection ("CBP") and United States Immigration and Customs Enforcement ("ICE"). CBP is the DHS component agency with the day-to-day responsibility for securing the borders of the United States, keeping terrorists and their weapons out of the United States, enforcing immigration and drug laws, and facilitating lawful international trade and travel. ICE is DHS's

principal investigative component, charged with conducting civil and criminal investigations to promote homeland security and public safety, as well as conducting operations enforcing immigration laws and removing those illegally present in the United States from within its borders.

3.      The Department of Homeland Security Office of Inspector General ("DHS-OIG") is an independent and objective inspection, audit, and investigative body charged with promoting effectiveness, efficiency, and economy in the DHS's programs and operations, and preventing and detecting fraud, abuse, mismanagement, and waste, including criminal conduct, in such programs and operations.  DHS-OIG maintains its headquarters in Washington, DC.  DHS-OIG is a department and agency within the executive branch of the United States government.

4.      DHS-OIG is also the principal component within DHS with the responsibility to investigate alleged criminal activity by DHS employees, including corruption by CBP and ICE personnel affecting the integrity of the borders of the United States.  DHS-OIG maintains a field office near the southern border of the United States, in McAllen, Texas ("MCA").

5.      Defendant WAYNE E. BALL served as a special agent with DHS-OIG at MCA from in or about January 2009 to in or about November 2012.

6.      As of August and September 2011, Supervisor A was one of Defendant BALL's supervisors at MCA.

7.      Special Agent A has served as a special agent with DHS-OIG from in or about January 2011 to the present.

8.      Memoranda of Activity ("MOAs") are documents required to be used by DHS-OIG special agents to record various types of investigative activity, including interviews, reviews of records, arrests, search warrant executions, service of subpoenas, and surveillance.  MOAs

were required to be completed truthfully and accurately. MOAs were also required to be signed

by the special agent who authored the MOA as well as a supervisor, and were then to be

maintained in the investigative case file. According to DHS-OIG policy, MOAs were required to

be submitted for approval by a special agent within five working days after the activity, or as

soon thereafter as was practical.

9.      In or about August and early September 2011, it was well known at MCA

that an internal DHS-OIG inspection that previously had been scheduled for much earlier in the

year had been rescheduled for September, and that part of the inspection involved a review of

MCA's criminal investigative case files. Supervisor A repeatedly reminded special agents to

make sure that their criminal investigative case files were up to date. Supervisor A appeared to

be very worried about the results of the inspection.

10.     One morning in or about late August or early September 2011, Supervisor A

called for defendant BALL to join Supervisor A and Special Agent A in the conference room at

MCA. When defendant BALL entered the conference room, Supervisor A and Special Agent A

were discussing what needed to be done to get one of Special Agent A's criminal investigative

case files ready for the internal inspection.

11.     Supervisor A indicated that he wanted more investigative activity documented

in the case file. Defendant BALL suggested that Special Agent A could undertake certain kinds

of investigative activity, such as research or "checks" using law enforcement databases, and then

create MOAs memorializing the activity. However, Supervisor A made it clear that this

suggestion to use legitimate means to document additional activity would not satisfy him.

12.     A gap when no investigative activity had been conducted in Special Agent A's

case had occurred before Special Agent A was assigned to the case. Indeed, the gap occurred

both before Special Agent A had completed his training and was present at MCA to investigate cases, and before he was even employed at DHS-OIG.

13.     Supervisor A made it clear that he wanted false MOAs created to fill the gap when no investigative activity had been conducted in order to conceal the inactivity from personnel conducting the internal DHS-OIG inspection.

14.     Supervisor A, Special Agent A and defendant BALL discussed how certain kinds of investigative activity, such as the use of law enforcement databases, can be electronically traced to see if they were actually used, when, and by whom.

15.     Special Agent A refused to sign false MOAs that documented activity before he had completed his training and was present at MCA to investigate cases and before he was employed at DHS-OIG.  However, at Supervisor A's direction, he agreed to draft the MOAs and falsely write that another special agent had conducted the activity.

16.     At Supervisor A's direction, defendant BALL agreed to sign the false MOAs that would be drafted by Special Agent A so that the inspectors would not detect a gap in investigative activity.

17.     Within a few days or weeks, before the internal DHS-OIG inspection, Special Agent A brought defendant BALL the false MOAs that they had discussed in the conference room with Supervisor A.  Defendant BALL signed and returned them to Special Agent A. Special Agent A remarked to defendant BALL that he hoped defendant BALL was not on leave

during the time when the MOAs attributed investigative activity to him.

FOR THE UNITED STATES:                          FOR THE DEFENDANT:

 

 

JACK SMITH                                      Wayne E. Ball
Chief                                           Defendant
Public Integrity Section

By: _____                Carlos A. Garcia
Timothy J. Kelly                                Attorney for Wayne E. Ball
Eric L. Gibson
Trial Attorneys
U.S. Department of Justice
Criminal Division
Public Integrity Section
1400 New York Ave., NW
Washington, DC  20005
(202) 514-1412

January 17, 2013