1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                     BROWNSVILLE DIVISION

4    UNITED STATES OF AMERICA        §     CASE NO. 1:13-CR-003
                                     §     BROWNSVILLE, TEXAS
5    VERSUS                          §     THURSDAY,
                                     §     JANUARY 17, 2013
6    WAYNE E. BALL                   §     3:05 P.M. TO 3:41 P.M.

7
                              REARRAIGNMENT
8
                 BEFORE THE HONORABLE RANDY CRANE
9                   UNITED STATES DISTRICT JUDGE

10
                            APPEARANCES:
11
         FOR PLAINTIFF/DEFENDANT:      SEE NEXT PAGE
12
         COURT RECORDER:               JUANITA TABARES
13
         COURT CLERK:                  STELLA CAVAZOS
14
         OFFICIAL INTERPRETER:         SANDRA CORTEZ
15                                     (PRESENT, NOT NEEDED)

16       USPO:                         NELLIE ELIZONDO

17       USPTS:                        STEPHEN ALVAREZ

18       USM:                          MATTHEW LESCH

19

20                 TRANSCRIPTION SERVICE BY:

21            JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                    935 ELDRIDGE ROAD, #144
22                  SUGAR LAND, TEXAS 77478
              Tel: 281-277-5325 / Fax: 281-277-0946
23               www.judicialtranscribers.com

24
         Proceedings recorded by electronic sound recording;
25          transcript produced by transcription service.

1                          <u>APPEARANCES</u>:

2

3   FOR THE PLAINTIFF:          TIMOTHY J. KELLY, ESQ.
                                ERIC L. GIBSON, ESQ.
4                               U.S. DEPARTMENT OF JUSTICE
                                CRIMINAL DIVISION
5                               1400 NEW YORK AVE NW
                                12TH FLOOR
6                               WASHINGTON, DC  20005

7

8
    FOR THE DEFENDANT:          CARLOS ANDRES GARCIA, ESQ.
9                               1305 E. GRIFFIN PARKWAY
                                MISSION, TX  78572
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    BROWNSVILLE, TEXAS; THURSDAY, JANUARY 17, 2013; 3:05 P.M.

2            THE COURT:  All right.  Let me call 13-CR-003,

3    United States of America versus Wayne Ball.

4            Announcements, please.

5            MR. KELLY:  Your Honor, Timothy Kelly for the

6    United States and I'm here with my partner, Eric Gibson.

7            MR. GARCIA:  Your Honor, Carlos Garcia for

8    Mr. Ball, present and ready for a plea.

9            THE COURT:  All right.  So this afternoon we're

10   scheduled for a Plea to a Criminal Information?

11           MR. KELLY:  Yes, Your Honor.

12           THE COURT:  All right.  So Mr. Ball is here?

13           MR. GARCIA:  Yes, Your Honor.

14           THE COURT:  Is that Mr. Ball?

15           DEFENDANT BALL:  Yes, Your Honor.

16           THE COURT:  Mr. Ball, if you could step forward, I

17   need to have the oath administered to you before we begin,

18   if you could just raise your right hand at this time?

19       (Defendant sworn.)

20           THE COURT:  Mr. Ball, you're now under oath.  This

21   means you're required to answer all of my questions

22   truthfully and I'm required to remind you that if you did

23   not answer all of them truthfully, then you could be later

24   prosecuted for committing perjury and/or for making a false

25   statement.

1          Do you understand this?

2          DEFENDANT BALL:  I do, sir.

3          THE COURT:  Mr. Ball, I've been told that you

4    intend to plead guilty to a Criminal Information.  Before I

5    can accept that guilty plea, I need to make certain that

6    it's done of your own free will and in accordance with law

7    and that's because when you plead guilty, you do give up

8    some important rights.  I'm going to explain some of your

9    rights to you here this afternoon.

10          If at any point during this process, you do not

11   understand something that I ask or say, please let me know

12   and I'll be happy to explain myself to you.

13          If we can begin with stating your full name for

14   the Record?

15          DEFENDANT BALL:  Yes, sir.  Wayne Elgin Ball.

16          THE COURT:  Mr. Ball, how old are you?

17          DEFENDANT BALL:  Forty years old.

18          THE COURT:  And how far did you go in school?

19          DEFENDANT BALL:  I have a Bachelor's Degree, sir.

20          THE COURT:  Where from?

21          DEFENDANT BALL:  University of Texas Pan American.

22          THE COURT:  And generally are you in good health?

23          DEFENDANT BALL:  Yes, sir.

24          THE COURT:  Have you ever been treated for any

25   mental illness or mental disorder?

1              DEFENDANT BALL:  No, sir.

2              THE COURT:  And in the past 24 hours, have you

3   taken any medicine, pills, drugs or alcohol?

4              DEFENDANT BALL:  No, sir.

5              THE COURT:  And have you understood all my

6   questions and do you believe you're competent to continue

7   with this hearing?

8              DEFENDANT BALL:  Yes, sir.

9              THE COURT:  Mr. Garcia, any reason to doubt your

10  client's competence?

11             MR. GARCIA:  No, Your Honor.

12             THE COURT:  All right.  Mr. Ball, I've been

13  advised that you intend to plead to a Criminal Information.

14  As you may know, in this country you cannot be charged with

15  a felony offense unless a Grand Jury finds that there is a

16  probable cause to believe a crime has been committed and

17  that you committed it.

18             In this case, however, the charges have been

19  brought against you by the filing of a "Criminal

20  Information."  If you waive your right to an Indictment,

21  then this case will proceed against you just as though you

22  had been indicted by a Grand Jury.

23             If you do not waive your right to Indictment, then

24  the Government may present its evidence to a Grand Jury and

25  ask the Grand Jury to return an Indictment against you.

1            As you know, a Grand Jury is a group of people, no

2   more than 23, no less than 16, and at least 12 of them must

3   find that there probable cause to believe a crime has been

4   committed and that you committed it before you can be

5   indicted.

6            Have you discussed this right to Indictment by a

7   Grand Jury with your lawyer?

8            DEFENDANT BALL:  Yes, sir.

9            THE COURT:  Do you have any questions about this

10  right to an Indictment by a Grand Jury?

11           DEFENDANT BALL:  No, sir.

12           THE COURT:  Is anyone promising you anything, or

13  is anyone threatened you in any way to cause you to waive

14  your right to an Indictment by a Grand Jury?

15           DEFENDANT BALL:  No, sir.

16           THE COURT:  And would you like at this time to

17  waive your right to Indictment by a Grand Jury and proceed

18  today with the filing of this Criminal Information?

19           DEFENDANT BALL:  Yes, sir.

20           THE COURT:  All right.  If you could please

21  execute the waiver here in open court?

22           Have you-all done that?

23      (Pause in the proceedings.)

24           THE COURT:  Okay.  The Court finds that the

25  Defendant's waiver of his right to an Indictment by a Grand

1  Jury has been knowingly and voluntarily waived.  The Record

2  will also reflect that the Defendant has executed the

3  written waiver here in open court, as well as his Counsel.

4  The Court, therefore, accepts this waiver of an Indictment.

5          And Mr. Ball, have you received a copy or been

6  shown a copy of the Criminal Information that's pending

7  against you?  That's just the formal charge.

8          DEFENDANT BALL:  Yes, sir.

9          THE COURT:  Have you had an opportunity to discuss

10 it with your attorney?

11         DEFENDANT BALL:  Yes, sir.  I have.

12         THE COURT:  Do you have any questions about this

13 charge that your lawyer could not answer for you?

14         DEFENDANT BALL:  No, sir.

15         THE COURT:  And are you satisfied with the

16 representation and advice that your lawyer has given to you

17 in this case?

18         DEFENDANT BALL:  I am, sir.

19         THE COURT:  All right.  I'm going to at this time

20 now have the lawyer for the Government read the Criminal

21 Information.  When he's finished, you're going to be asked

22 whether you plead guilty or not guilty to it, so please

23 listen carefully.

24         This is just a one-count Information, correct?

25         MR. KELLY:  Yes, Your Honor.

1        THE COURT:  All right.  Please listen carefully,

2  Mr. Ball.

3        MR. KELLY:  Your Honor, unless otherwise

4  specified, at all relevant times United States Department of

5  Homeland Security was a department and agency within the

6  Executive Branch of the United States Government, charged

7  with protecting the United States from threats to the

8  national security, including ensuring the security of the

9  borders of the United States.

10        DHS has included agencies, including among others,

11  United States Customs and Border Protection, "CBP," and the

12  United States Immigration and Customs Enforcement, "ICE."

13        CBP was the DHS component agency with the

14  day-to-day responsibility for securing the borders of the

15  United States, keeping terrorists and their weapons out of

16  the United States, enforcing immigration and drug laws, and

17  facilitating lawful international trade and travel.

18        ICE was DHS' principle investigative component

19  charged with conducting civil and criminal investigations to

20  promote Homeland security and public safety, as well as

21  conducting operations enforcing immigration laws and

22  removing those illegally present in the United States from

23  within its borders.

24        The Department of Homeland Security's Office of

25  Inspector General, or "DHSOIG," was an independent

1   objective, inspection, audit and investigative body charged

2   with promoting effectiveness, efficiency, and economy in

3   DHS' programs and operations in preventing and detecting

4   fraud, abuse, mismanagement, and waste, including criminal

5   conduct in such programs and operations.

6           In its semi-annual report to Congress dated

7   April 1st, 2011, through September 30th, 2011, DHSOIG

8   reported that it had initiated 715 investigations, closed

9   433 investigations, referred 202 investigations for criminal

10  prosecution, had 81 investigations accepted for prosecution

11  and had 74 investigations declined for prosecution.

12          DHSOIG also reported that its investigations

13  resulted in 110 Indictments and 136 convictions, and that it

14  had 2,564 investigations open at the time of the report.

15          DHSOIG maintained its headquarters in Washington,

16  DC.  DHSOIG was a department and agency within the Executive

17  Branch of the United States Government.

18          DHSOIG was also the principle component within DHS

19  with the responsibility to investigate alleged criminal

20  activity by DHS employees, including corruption by CBP and

21  ICE personnel effecting the integrity of the borders of the

22  United States.  DHSOIG maintained a field office near the

23  southern border of the United States in McAllen, Texas, that

24  is "MCA."

25          Defendant Wayne E. Ball served as a Special Agent

1   with DHSOIG at MCA from in or about January 2009 to in or

2   about November 2012.  Supervisor A served as one of

3   Defendant Ball's supervisors at MCA.  Special Agent A served

4   as a Special Agent with DHSOIG from in or about January 2011

5   to the present.

6            Criminal Investigation One was initiated by DHSOIG

7   in or about March 2010.  The investigation concerned

8   allegations that a CBP Officer was assisting the unlawful

9   smuggling of undocumented aliens and narcotics into the

10  United States.

11           In or about June or July 2011, Criminal

12  Investigation One was assisted to Special Agent A and his

13  partner.

14           Memoranda of Activity were documents required to

15  be used by DHSOIG Special Agents to record various types of

16  investigative activity, including interviews, reviews of

17  records, arrests, search warrant executions, service of

18  subpoenas and surveillance.  MOAs were required to be

19  completed truthfully and accurately.  MOAs were also

20  required to be signed by the Special Agent who authored the

21  MOA, as well as a supervisor, and for them to be maintained

22  in the investigative case file.

23           According to DHSOIG policy, MOAs were required to

24  be submitted for approval by a Special Agent within five

25  working days after the activity, or as soon thereafter as

1   was practical.

2          In September 2011, DHSOIG conducted an internal

3   inspection of MCA to evaluate whether it's internal

4   investigative standards and policies were being followed at

5   MCA.  Inspection had originally been scheduled for February

6   2011.  Since in or about February 2011 both the lead

7   inspector and MCA management, including Supervisor A, had

8   been preparing for the inspection, including through

9   discussions with each other.

10         The Conspiracy and Its Objects:  Beginning in or

11  about 2011 and continuing until in or about January 2012 in

12  the Southern District of Texas and elsewhere, Defendant

13  Ball, Supervisor A, and Special Agent A and others known and

14  unknown to the United States, did unlawfully combine,

15  conspire, confederate and agree together and agree with each

16  other to commit the following offenses against the

17  United States:

18         (A) To falsify documents and to make false entries

19  and records with the intent to impede, obstruct and

20  influence the investigation and proper administration of a

21  matter within the jurisdiction of DHSOIG and in relation to

22  and in contemplation of any such matter in violation of

23  18 USC Section 1519; and

24         (B) To intentionally and corruptly endeavor to

25  influence, obstruct and impede the due and proper

1  administration of the law under which a proceeding, to-wit,

2  an internal DHSOIG inspection of MCA, was pending before

3  DHSOIG, in violation of 18 USC 1505.

4          The Purpose of the Conspiracy:  It was a purpose

5  of the conspiracy to conceal severe lapses in investigative

6  standards and internal policies, including significant

7  periods of inactivity in pending criminal investigations

8  over periods of months or years from DHSOIG personnel

9  conducting the internal inspection and from DHSOIG

10 headquarters.  More specifically, to conceal those lapses,

11 in particular, criminal investigations, by falsifying

12 investigative activity, which in truth and fact had not

13 taken place.

14         Manner and Means:  A conspiracy was carried out by

15 the following manner and means:  At Supervisor A's

16 direction, Special Agent A drafted false MOAs to fill the

17 gaps of inactivity in Criminal Investigation One.  Because

18 the MOAs were intended to fill gaps that had occurred when

19 Special Agent A was either not present at MCA to investigate

20 cases, or was not employed by DHSOIG at all.  At

21 Supervisor A's direction, Special Agent A attributed the

22 investigative activity to Defendant Ball.

23         At Supervisor A's direction, Defendant Ball signed

24 and backdated the false MOAs.  Supervisor A also signed and

25 backdated the false MOAs, and the MOAs were placed in the

1   DHSOIG case file for Criminal Investigation One in advance

2   of the internal inspection of MCA.

3           Overt Act:  In furtherance of the conspiracy and

4   to achieve its purposes, in or about September 2011 in the

5   Southern District of Texas, Defendant Ball signed and

6   backdated the false MOAs related to Criminal Investigation

7   One that were provided to him by Special Agent A, on

8   violation of Title 18 USC Section 371.

9           THE COURT:  All right.  Mr. Ball, to this charge,

10  how do you plead?  Guilty or not guilty?

11          DEFENDANT BALL:  Guilty, Your Honor.  Guilty.

12          THE COURT:  Mr. Ball, under the Constitution and

13  laws of this country, you do have the right to plead not

14  guilty and if you plead not guilty, then you have the right

15  to a trial before either a Jury or a Judge on this charge

16  that's pending against you.

17          Do you understand this right?

18          DEFENDANT BALL:  I do.

19          THE COURT:  At a trial you would also have the

20  right to the assistance of a lawyer whether you could afford

21  one or not.  If you could not afford one, then one would be

22  appointed to represent you at all stages of these

23  proceedings against you at no cost to you.

24          Do you understand this?

25          DEFENDANT BALL:  Understood, sir.

1          THE COURT:  If you desire to plead not guilty, in

2     order to find you guilty, the Government would have to prove

3     at a trial by competent evidence and beyond a reasonable

4     doubt these charges that are pending against you.

5          Do you understand this?

6          DEFENDANT BALL:  Yes, sir.

7          THE COURT:  At a trial you would be presumed

8     innocent.  It would not be your burden to have to prove

9     yourself innocent.

10          Do you understand this?

11          DEFENDANT BALL:  Yes, sir.

12          THE COURT:  And in the course of a trial, the

13     witnesses for the Government would have to come into the

14     courtroom and testify in front of you and your lawyer.  Your

15     lawyer could question the witnesses against you, object to

16     any evidence offered by the Government, and then you would

17     have the right to present any evidence in defense of these

18     charges that you might want to present.

19          Do you understand this?

20          DEFENDANT BALL:  Yes, sir.

21          THE COURT:  This would also include the right to

22     take the witness stand and to testify in your own defense if

23     you desire.  However, you could not be forced to testify or

24     compelled to incriminate yourself and nobody could hold it

25     against you if you chose not to testify at a trial.

1          Do you understand this?

2          DEFENDANT BALL:  Yes, sir.

3          THE COURT:  When you plead guilty, however, you

4    give up this right against incriminating yourself because in

5    order for me to be satisfied that you actually committed

6    this offense, I will need to ask you some questions about

7    these events and you could not refuse to answer them.

8          Do you understand this?

9          DEFENDANT BALL:  I do, sir.

10         THE COURT:  Also, if I accept your guilty plea,

11   you'll be giving up these rights that I have just discussed

12   with you because there will be no trial in your case.  I

13   will simply enter a judgment of guilty and sentence you on

14   the basis of your plea of guilty here this afternoon.

15         Do you understand that there will be no trial in

16   your case?

17         DEFENDANT BALL:  I do, sir.

18         THE COURT:  And Mr. Ball, in your case do you

19   understand that I could -- or the Court could send you to

20   prison for up to five years and fine you up to $250,000 for

21   this offense?

22         DEFENDANT BALL:  Yes, sir.

23         THE COURT:  In addition to the imprisonment and

24   fine that you face, the Court would also be required to

25   impose upon you a supervised-release term.  This is a term

1    of supervision that starts as soon as you get out of prison

2    and is, therefore, in addition to any imprisonment and in

3    your case you could be supervised by the US Probation Office

4    for up to three years after you get out of prison.

5              Do you understand this?

6              DEFENDANT BALL:  Yes, sir.

7              THE COURT:  I'm also required to impose upon you a

8    $100 special assessment.

9              Do you understand this?

10             DEFENDANT BALL:  Yes, sir.

11             THE COURT:  Have you spoken with your attorney

12   about these Sentencing Commission Guidelines and how these

13   Sentencing Guidelines might apply in your case?

14             DEFENDANT BALL:  I have, sir.

15             THE COURT:  I will not be able to determine

16   exactly which Sentencing Guideline applies in your case

17   until after the Probation Office has prepared the

18   Presentence Report about you, and you and your lawyer have

19   had the opportunity to review and object to this report.

20             Do you understand this?

21             DEFENDANT BALL:  Yes, sir.

22             THE COURT:  Once the Probation Office does

23   determine which of the Sentencing Guideline ranges does

24   apply in your case, the Court may nevertheless vary or

25   depart from these guidelines and you could be sentenced up

1  to the maximum punishment that you face in your case and you

2  would not be able to take back your guilty plea.

3          Do you understand this about the advisory

4  non-binding nature of the Sentencing Guidelines?

5          DEFENDANT BALL:  Yes, sir.

6          THE COURT:  Has anybody promised you or guaranteed

7  to you the sentence that you are going to receive in this

8  case?

9          DEFENDANT BALL:  No, sir.

10         THE COURT:  Has anyone attempted in any way to

11 force you to plead guilty here this afternoon or threaten

12 you or told you that if you did not plead guilty, some

13 further action or charges would be brought against you?

14         DEFENDANT BALL:  No, sir.

15         THE COURT:  This offense to which you've just

16 plead guilty is a felony offense and if I accept your guilty

17 plea, then you will be adjudged guilty of this felony

18 offense, which will have consequences to you.  You'll lose

19 certain rights that you might have had in this country, like

20 the right to possess a firearm and ammunition, the right to

21 certain Government licenses, employments or benefits, and --

22 sorry, you're a US Citizen, so the other doesn't apply.

23         Do you understand these other consequences of your

24 guilty plea?

25         DEFENDANT BALL:  I do, Your Honor.

1         THE COURT:  All right.  And is there a Plea

2  Agreement in this case?

3         MR. KELLY:  Yes, there is, Your Honor.

4         THE COURT:  If you would please describe it to the

5  Court?

6         MR. KELLY:  Yes, Your Honor.  It is a

7  approximately 14-page agreement that sets out -- and

8  attached to it is our factual stipulations that form the

9  factual basis for the plea.  It sets out the charges and

10 statutory penalties that we've discussed here today.  The

11 Parties have -- it sets out certain stipulations as to

12 Guidelines that -- the Guideline recommendations that the

13 Parties have agreed to, agreed to advocate to the Court at

14 the time of sentencing that would apply to the Defendant.

15         In other words, the Parties have reached a

16 stipulated Guideline range that would apply to Mr. Ball.

17         There is further agreement as to sentencing

18 allocution.  There is an aspect of the agreement that

19 involves the Defendant cooperating further with the

20 Government and so in setting out the rights and obligations

21 of the Defendant under that cooperation portion of the

22 agreement, there is a portion of the agreement that

23 describes that the Court -- as the Court has indicated here

24 today -- is not bound by the agreement.

25         There is a portion of the agreement that sets out

1  the waiver of certain appeal rights the Defendant has waived

2  as part of the agreement.

3           There is a portion of the agreement that deals

4  with the release and detention of the Defendant in that

5  while the Court will make the final decision regarding the

6  Defendant's bond status, the United States has agreed not to

7  a change in the release conditions.  Whether the Defendant

8  is released here today, there's a portion of the agreement

9  that sets out the consequences for the Defendant if he were

10 to breach the agreement and that the Defendant -- and that

11 the agreement is the complete agreement between the Parties.

12          THE COURT:  All right.  Mr. Ball, did you have an

13 opportunity to review and discuss this Plea Agreement with

14 your lawyer before you signed it?

15          DEFENDANT BALL:  I have, sir.

16          THE COURT:  Did you have any questions about it

17 that your lawyer could not answer for you?

18          DEFENDANT BALL:  No, sir.

19          THE COURT:  Your Plea Agreement with the

20 Government is a non-binding Plea Agreement and what that

21 means is it is not binding on the Court and the Court is not

22 required to follow it, and you would have no right to take

23 back your guilty plea if the Court did not follow the Plea

24 Agreement, even if it resulted in a sentence less favorable

25 to you than what may have been contemplated by your Plea

1    Agreement.

2            Do you understand this?

3            DEFENDANT BALL:  Yes, sir.

4            THE COURT:  All right.  Knowing now all of the

5    rights that I have explained to you here throughout this

6    afternoon, would you at this time like to change your mind

7    and take back your guilty plea?

8            DEFENDANT BALL:  No, sir.

9            THE COURT:  All right.  I'm now going to then ask

10   the Government to describe for me the facts in this case

11   that the Government was prepared to prove had you proceeded

12   forward to a trial.  It's important that you listen

13   carefully because when he's finished describing these facts

14   about you, I'm going to ask you whether his statements were

15   all correct.

16           You may proceed.

17           MR. KELLY:  Your Honor, the United States would

18   have been prepared to prove beyond a reasonable doubt that

19   the United States Department of Homeland Security is a

20   department and agency within the Executive Branch of the

21   United States Government charged with protecting the

22   United States from threats to the national security,

23   including ensuring the security of the borders of the

24   United States.

25           (2)  That DHS' component agencies include, among

1  others, United States Customs and Border Protection and the

2  United States Immigration and Customs Enforcement.  CBP is

3  this DHS component agency with day-to-day responsibility for

4  securing the borders of the United States, keeping

5  terrorists and their weapons out of the United States,

6  enforcing immigration and drug laws, and facilitating lawful

7  international trade and travel.

8          ICE is DHS's principal investigative component

9  charged with conducting civil and criminal investigations,

10  to protect Homeland security and public safety, as well as

11  conducting operations, enforcing immigration laws and

12  removing those illegally present in the United States from

13  within its borders.

14          The Department of Homeland Security Office of

15  Inspector General is an independent and objective

16  inspection, audit and investigative body charged with

17  promoting effectiveness, efficiency and economy in the DHS'

18  programs and operations, and preventing and detecting fraud,

19  abuse, mismanagement and waste, including criminal conduct,

20  in such programs and operations.

21          DHSOIG maintains its headquarters in Washington,

22  DC.  DHSOIG is a department and agency within the Executive

23  Branch of the United States Government.

24          DHSOIG is also a principle component within DHS

25  with the responsibility to investigate alleged criminal

1  activity by DHS employees, including corruption by CBP and

2  ICE personnel, effecting the integrity of the borders of the

3  United States.

4         DHSOIG maintains a field office near the southern

5  border of the United States in McAllen, Texas; otherwise

6  known as "MCA."

7         Defendant Wayne E. Ball served as a Special Agent

8  with DHSOIG at MCA from in or about January 2009 to

9  in or about November 2012.

10        As of August and September 2011, Supervisor A was

11  one of Defendant Ball's supervisors at MCA.  Special A has

12  served as a Special Agent with DHSOIG from in or about

13  January 2011 to the present.

14        Memoranda of Activity, or "MOAs," are documents

15  required to be used by DHSOIG Special Agents to record

16  various types of investigative activities, including

17  interviews, reviews of records, arrests, search warrant

18  executions, service of subpoenas and surveillance.  MOAs

19  were required to be completed truthfully and accurately.

20  MOAs were also required to be signed by the Special Agent

21  who authored the MOA, as well as the supervisor, and were

22  then to be maintained in the investigative case file.

23        According to the DHSOIG policy, MOAs were required

24  to be submitted for approval by a Special Agent within five

25  working days after the activity, or as soon thereafter as

 1  was practical.

 2          In or about August and early September 2011, it

 3  was well known as MCA that an internal DHSOIG inspection

 4  that previously had been scheduled for much earlier in the

 5  year, had been rescheduled for September, and that part of

 6  the inspection involved a review of MCA's criminal

 7  investigative case files.

 8          Supervisor A repeatedly reminded Special Agents to

 9  make sure their criminal investigative case files were

10  up-to-date.  Supervisor A appeared to be very worried about

11  the results of the inspection.

12          One morning in or about late August or early

13  September 2011, Supervisor A called for Defendant Ball to

14  join Supervisor and Special Agent A in the conference room

15  at MCA.  When Defendant Ball entered the conference room,

16  Supervisor A and Special Agent A were discussing what needed

17  to be done to get one of Special Agent A's criminal

18  investigative case files ready for the internal inspection.

19          Supervisor A indicated that he wanted more

20  investigative activity documented in the case file.

21  Defendant Ball suggested that Special Agent A could

22  undertake certain kinds of investigative activity, such as

23  research or checks using law enforcement databases, and then

24  create MOAs memorializing that activity; however

25  Supervisor A made it clear that this suggestion to use

1   legitimate means to document additional activity would not

2   satisfy him.

3        A gap when no investigative activity had been

4   conducted in Special Agent A's case had occurred before

5   Special A was assigned to the case.  Indeed, the gap

6   occurred both before Special Agent A had completed his

7   training and was present at MCA to investigate cases, and

8   before he was even employed at DHSOIG.

9        Supervisor A made it clear that he wanted false

10   MOAs created to fill the gap when no investigative activity

11   had been conducted in order to conceal the inactivity from

12   personnel conducting the internal DHSOIG inspection.

13        Supervisor A, Special Agent A, and Defendant Ball

14   discussed how certain kinds of inactivity, such as the use

15   of law enforcement databases, can be electronically traced

16   to see if they were actually used, when and by whom.

17   Special Agent A refused to sign the false MOAs that

18   documented activity before he had completed his training and

19   was present at MCA to investigate cases, and before he was

20   employed at DHSOIG.

21        However, at Supervisor A's direction, he agreed to

22   draft the MOAs and to falsely write that another Special

23   Agent had conducted the activity.

24        At Supervisor A's direction, Defendant Ball agreed

25   to sign the false MOAs that would be drafted by Special

1 | Agent A so that the inspectors would not detect a gap in
2 | investigative activity.

3 |        Within a few days or weeks before the internal
4 | DHSOIG inspection, Special Agent A brought Defendant Ball
5 | the false MOAs that they had discussed in the conference
6 | room with Supervisor A.  Defendant Ball signed and returned
7 | them to Special Agent A.  Special Agent A remarked to
8 | Defendant Ball that he hoped Defendant Ball was not on leave
9 | during the time when the MOAs attributed investigative
10 | activity to him.

11 |        THE COURT:  All right.  Mr. Ball, you've heard
12 | these facts described by the US Attorney.  Were the facts
13 | stated by the US Attorney true and correct?

14 |        DEFENDANT BALL:  They are, sir.

15 |        THE COURT:  Is there any part of what he said that
16 | you would change?

17 |        DEFENDANT BALL:  No, sir.

18 |        THE COURT:  All right.  Now we've been using some
19 | pseudonyms.  Do you know who these people are?  Special
20 | Agent A, do you know who that person -- do you-all have an
21 | understanding of who that person is?

22 |        DEFENDANT BALL:  Yes, sir.

23 |        THE COURT:  All right.  And the reason that we're
24 | not disclosing this Special Agent A's name for this factual
25 | recitation is what?

1          MR. KELLY:  Well, Your Honor, consistent with the

2     Government's policy of not naming uncharged -- individuals

3     who at present are not charged in a charging document.  The

4     only way to preserve that policy then with regard to the

5     factual basis is to identify them the way they would be in

6     the charging document at this time.

7          THE COURT:  All right.  I assume this is -- from

8     what you've just said, that it is the intention of the

9     Government to charge Special Agent A with some offense?

10         MR. KELLY:  Your Honor, I'm not going to make -- I

11    don't believe I'm prepared to make a representation about

12    any other party here today, but I'll just say that they are

13    individuals here for whom, I think the facts speak for

14    themselves in terms of what kind of conduct they committed

15    and it's the Department of Justice policy not to identify

16    any party who is not charged.

17         THE COURT:  And there was another, I think a

18    Special Investigator A.  Mr. Ball, do you understand who

19    that is, as well, even though it's been -- he's been

20    described or she's been described by a pseudonym?

21         DEFENDANT BALL:  I do, sir.

22         MR. KELLY:  To make the Record totally clear, Your

23    Honor, there is a Special Agent A and a --

24         THE COURT:  And a Supervisor.

25         MR. KELLY:  -- Supervisor A, just --

1          THE COURT:  Right.  I stand corrected.

2          Do you understand who both of these individuals

3 are?

4          DEFENDANT BALL:  I do, Your Honor.

5          THE COURT:  All right.  I need to make sure that

6 the facts, since we're using a fictitious name, that you're

7 in agreement with who these two persons are and with the

8 factual recitation as it pertains to both of them.

9          All right.  It's the finding of the Court and in

10 this case, this Defendant is competent.  He's capable of

11 entering an informed plea.  He understands the nature of the

12 charge against him, the consequence of his plea of guilty

13 and the maximum punishment that he faces, and that this plea

14 of guilty is a knowing and voluntary plea, supported by

15 facts that contain the elements of the offense.  The Court

16 therefore accepts this plea of guilty and the Defendant is

17 adjudged guilty of this offense.

18          Mr. Ball, the next step in this process -- one of

19 the next steps in this process for you is that now a

20 Probation Officer will be assigned to your case.  That

21 Officer will be responsible for preparing a Presentence

22 Report about you and that's a report that the Court relies

23 upon, in part, to determine your sentence.

24          A Probation Officer should interview you in the

25 next few weeks to begin gathering in the information they

1  need about you.  When they complete their investigation,

2  they will type up the report.  A copy is given to your

3  lawyer, who is required to meet with you, review the report

4  with you to make sure that it is all correct.

5          You will then come back to be sentenced.  When you

6  do so, you will have the opportunity to address the Court at

7  that time, so if there's anything that you'd like the Court

8  to consider in determining a fair and just sentence for you,

9  you'll have the opportunity to do so at that hearing.

10         I'm ordering in your case that the Presentence

11 Report be prepared by February 28th, any objection within

12 two weeks, and you are scheduled for sentencing here before

13 The Honorable Judge Tagle on April 16th, 2013 at 1:30 p.m.

14         MR. KELLY:  Your Honor, I'll just make a

15 representation that -- and we'll certainly set that date.,

16 obviously if it's the Court's preference to do so.

17         THE COURT:  This is a tentative date.  If one goes

18 in and just file a motion then Judge Tagle will take it up.

19         The Court is sitting here handling the Docket of

20 Judge Tagle by consent.  This case is one that Judge Tagle

21 will handle.  The Court was happy to accommodate her in

22 taking this guilty plea.

23         It is this Court's practice not to accept appeal

24 waivers and I understood that that might have been a part of

25 this Plea Agreement, but the practice in this court is to

1   accept them and that's one of the reasons why I did that.

2           This is a non-binding Plea Agreement.  Judge Tagle

3   can reject any part of the Plea Agreement that she may

4   desire to do so prior to sentencing and of course, if she

5   does that, the Defendant would have the right to take back

6   his guilty plea if he desired, but for now the Court has

7   accepted the Plea Agreement and the guilty plea.

8           And in terms of an exact final sentencing date,

9   Judge Tagle will advise the Parties of that --

10          MR. KELLY:  I just wanted --

11          THE COURT:  -- at the appropriate time.

12          MR. KELLY:  If I may, Your Honor, just to make a

13  Record:  We would anticipate so moving before Judge Tagle

14  only because we don't anticipate the Defendant's cooperation

15  will be complete by that date, so.

16          THE COURT:  All right.  You did talk about a bond

17  or a custody recommendations?  I thought that was something

18  that you-all talked about.  I don't know what the situation

19  is.  Has he been magistrated?  Is he on any kind of a bond

20  or Pretrial Orders of any sorts?

21          MR. GARCIA:  Your Honor, no.  Mr. Ball met with

22  Pretrial Services for the first time this morning.

23          THE COURT:  All right.

24          MR. GARCIA:  My understanding of the Agreement is

25  that he not to be taken into custody and be allowed to

1  continue on bond.

2          THE COURT:  But there needs to be some conditions

3  of his release, --

4          MR. GARCIA:  Yes, Your Honor.

5          THE COURT:  -- custody not necessarily being a

6  part of that, but yet other conditions need to be imposed

7  that are standard in all felony cases.

8          Somebody here from Pretrial?

9          MR. ALVAREZ:  Good afternoon.  Steve Alvarez,

10 Pretrial Services.  I have prepared a report for the Judge

11 to review.

12         THE COURT:  All right.  Has anybody seen that

13 report yet?

14         MR. ALVAREZ:  No, Your Honor.

15         MR. KELLY:  Government has not, Your Honor.

16         MR. ALVAREZ:  I have copies and will obviously

17 provide one to the Court.

18     (Pause in the proceedings.)

19         MR. GARCIA:  Your Honor, if I may?  Sunday was

20 Mr. Ball's last day of employment because of this pending

21 charge --

22         THE COURT:  Uh-huh.

23         MR. GARCIA:  -- so he will be looking to seek out

24 new employment.  We'd ask the Court to --

25         MR. KELLY:  Excuse me.

1              MR. GARCIA:  Your Honor, I'd object to any

2    recommendation --

3              THE COURT:  I'm still on page two.  You-all are

4    way ahead of me.  Hold on a second.

5         (Pause in the proceedings.)

6              THE COURT:  All right.  So the recommendations

7    seem reasonable to the Court.  Is there any particular one

8    that you have particular issue with, Mr. Garcia?

9              MR. GARCIA:  None, Your Honor.

10             THE COURT:  How about the Government?

11             MR. KELLY:  No, Your Honor.  We'd certainly defer

12   to the Court as to the amount of an unsecured bond, but all

13   the other recommendations we do not object to.

14             THE COURT:  All right.  Typically these are done

15   by a Magistrate Judge, who I feel have a lot better

16   expertise than myself in determining pretrial release bond

17   amounts and conditions, although I do set them occasionally.

18             I'm going to simply adopt the recommendations of

19   the Pretrial Services Reports and order that Mr. Ball be

20   released in conformance with all these twelve requirements

21   and whatever standard requirements that have been adopted by

22   this Court may add to these.

23             Anything else I need to address at this time?

24             MR. GARCIA:  Not on behalf of the Defense, Your

25   Honor.

1          MR. KELLY:  We would only add that we have the

2    signed versions of the factual basis of the plea agreement

3    here.  I don't have the --

4          THE COURT:  All right.  We'll need that, as well

5    as the signed Plea Agreement.  Have you -- I don't know if

6    you've tendered both of those to the Court, but we'll need

7    both of those.

8          And so Mr. Ball will need to --

9          MS. CAVAZOS:  Will those be under seal or not?

10          THE COURT:  I think those are --

11          MR. KELLY:  They're not.

12          THE COURT:  Yeah, they don't -- well, we -- the

13    policy of the Court that all Plea Agreements are under seal,

14    so the Plea Agreement will be under seal.  The factual

15    recitation not under seal.  Today's hearing was not under

16    seal, the Public Record what was -- what transpired here.

17          If for some reason the Parties feel it should be

18    sealed later, you can simply file a motion to do that and we

19    can consider that request, but for now it won't be.

20          So Mr. Ball, from here you're going to need to

21    execute some paperwork with respect to your release

22    conditions.  You've seen the recommendation.  You'll need to

23    be in compliance with those.  You'll be interviewed by

24    Pretrial Service Officer and monitored regularly to ensure

25    compliance with these conditions.

1          You may find that there's a need to do something

2    outside these conditions, you just need to get permission

3    from your Pretrial Service Officer and the Courts ordinarily

4    to do that.  If you needed to travel, for example, outside

5    the District or had some need for a passport for whatever

6    reason, I know your passport is going to be surrendered.

7          You'll be given a period of time to do that,

8    unless you brought your passport with you here today?

9          DEFENDANT BALL:  I failed to do that today, Your

10   Honor.  I will get it shortly.

11         THE COURT:  All right.  You'll be given a

12   reasonable period of time to surrender that to the Pretrial

13   Services Office.

14         All right.  Anything else I need to address?

15         MR. KELLY:  No, Your Honor.

16         MR. GARCIA:  No, Your Honor.

17         THE COURT:  Thank you all for being here this

18   afternoon.  You're excused at this time.

19         DEFENDANT BALL:  Thank you, sir.

20         MR. GARCIA:  Good afternoon.

21         THE MARSHAL:  All rise.

22      (Proceeding adjourned at 3:41 p.m.)

23

24

25                        *  *  *  *  *

1            *I certify that the foregoing is a correct*
2   *transcript to the best of my ability from the electronic*
3   *sound recording of the proceedings in the above-entitled*
4   *matter.*
5   */S/ MARY D. HENRY*
6   *AMERICAN ASSOCIATION OF ELECTRONIC REPORTERS*
7   *AND TRANSCRIBERS  CET**D-337*
8   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
9   *JTT INVOICE #52185*
10  *DATE:  MARCH 5, 2014*
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25